UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES
BANKRUPTCY COURT
FILED

2004 AUG 26 PM 3:48

C.L. AUSTIN, CLERK
MILWAUKEE, WISCONSIN

In re

DERRICK BUCHNER and
SHANNON BUCHNER,

Debtors.

Case No. 03-37885

Chapter 7

## MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR TURNOVER

This matter came before the court upon the chapter 7 trustee's motion for turnover of property of the estate. This court has jurisdiction over the parties involved and has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(E), (F), (K) and (O). The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. For the reasons stated below, the trustee's motion is granted.

### BACKGROUND

The debtors purchased a 1996 Harley Davidson motorcycle in April 2003 and obtained financing from United One Credit Union. The credit union's security interest was perfected by the Wisconsin Department of Transportation (DOT) on May 10, 2003. On September 12, 2003, the debtors refinanced the credit union loan with a loan from the First National Bank in Manitowoc. The bank's loan was secured by the debtors' 1998 Pontiac Montana, a third mortgage on their home and the subject motorcycle. The credit union received the funds from the bank, along with the bank's request for a release of its security interest on September 18,

2003. A credit union representative negotiated the check and signed the form releasing the lien on the motorcycle on that same date – September 18, 2003. The signed release was apparently not returned to the bank until October 1, 2003. The title/lien documents were, in turn, received by the DOT on October 6, 2003 (a Monday), and the application was processed on October 22, 2003. The confirmation of security interest perfection was issued by the DOT on October 25, 2003. The debtors filed their chapter 7 petition on December 9, 2003.

On January 15, 2004, the chapter 7 trustee sent a letter to the bank requesting a release of the security interest in the motorcycle due to its untimely perfection during the preference period. The bank forwarded a release of its security interest to the trustee on January 24, 2003. The trustee subsequently filed the subject motion to compel the debtors to turn over property of the estate, namely the motorcycle subject to the lien now held by the trustee for the benefit of the estate, so it could be sold. It is not clear if the amount of the lien was demanded, but it does appear that the debtors made no payments to the trustee.

After a rocky start, in which the parties disagreed on the legal issues and procedural posture of the case, the matter was fully briefed. The court is satisfied that material facts are not in dispute, and the controversy can be decided as a matter of law.

## ARGUMENTS

The trustee contends the bank's lien is avoidable as a preference under 11 U.S.C. § 547, and he is the proper party to enforce the lien. The lien was not perfected within the ten-day period provided in § 547(e)(2)(A), the perfection was within 90 days of the date of the petition, the transfer was on account of an antecedent debt, the debtors were presumptively insolvent on the date of the transfer, and the bank would receive more than if it were an unsecured creditor.
146:8/26/04 2

Case 03-37885-mdm    Doc 48    Filed 08/26/04    Page 2 of 8

Since the bank released the lien voluntarily upon demand by the trustee, he asserts that the estate now holds the lien.

The debtors oppose the motion for turnover, arguing the trustee cannot enforce the lien. They assert that he must meet all of the elements of 11 U.S.C. § 547(b) before he is entitled to turnover of the property, and there are defenses to his claim that a preference has taken place. The debtors further argue that 11 U.S.C. § 547(c)(1), which establishes an exception for the avoidability of a transfer for a substantially contemporaneous exchange for new value, is applicable. The debtors reject the trustee's assertion that his receipt of the lien release signed by the bank is legally sufficient, without more, to release the bank's lien and to preserve it for the estate. The debtors further note that because there is a co-signer on the loan, they will still be obligated to pay the bank on the co-signer's behalf if the lien is avoided. Thus, in order to keep the motorcycle, they will have to pay for it twice.

The bank supports the debtors' arguments and contends it acted diligently throughout the entire process. According to the bank, the lien release was prompted by the trustee's unilateral conclusion that the perfection of the lien was an avoidable preference, and it now challenges the trustee's position as lienholder.

## DECISION

This matter is before the court on the trustee's motion to compel the debtors to turn over property of the estate after the secured creditor released it lien on the collateral. The debtors are not making payments to the trustee, who now asserts his rights on behalf of the estate as lienholder. 11 U.S.C. § 551. Arguably, the bank could have refused to release the lien, forcing the trustee to file an avoidance action, but it chose to avoid that litigious route and released its

146:8/26/04 3

Case 03-37885-mdm   Doc 48   Filed 08/26/04   Page 3 of 8

lien. Now it claims such release was in error. While the court is sympathetic to the bank's remorse over the consequences of its decision not to force the trustee to litigate the preference issue, there is no allegation that the decision was anything but voluntary on the bank's part. Consensual resolution of disputes are to be encouraged, and the bank cannot now reverse its prior consensual act.

This is not to say that the debtors are not affected by the bank's act in releasing the lien. Presumably, the debtors were not consulted or allowed any input in the bank's decision. There is a co-signer, possibly leaving the debtors open to informal pressure, which is sometimes more compelling than legal pressure, to pay both the trustee and the bank. Therefore, to ensure the correct result is reached, the court will address whether the bank had an avoidable security interest in the motorcycle. If the bank's interest would have been avoidable, then its voluntary release to the trustee was proper, and the lien is preserved for the estate.

Section 547(b) of the Bankruptcy Code provides that, except as provided in subsection (c), the trustee may avoid any transfer of property of the debtor

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if –
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

146:8/26/04                                  4

Case 03-37885-mdm    Doc 48    Filed 08/26/04    Page 4 of 8

11 U.S.C. § 547(b). All five elements are prerequisites to the finding of a voidable preference. *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981).

> Section 547(e)(2) of the Bankruptcy Code provides that a transfer is made:
>
> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);
> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of –
> > (i) the commencement of the case; or
> > (ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2).

Although the note and security agreement was dated September 12, 2003, the right to cancel expired at midnight on September 16, 2003, and the check was sent to the credit union on September 17, 2003. Because the note was unenforceable prior to September 17th, the transfer "took effect" between the debtors and the bank on that date.

As noted above, the transfer is deemed "made" at the time it takes effect between the parties if it is perfected within ten days thereafter or, if it is not perfected within ten days, the transfer is deemed to have occurred when it is perfected. 11 U.S.C. § 547(e)(2). A security interest in a motor vehicle is perfected in Wisconsin pursuant to § 342.19(2), Wis. Stats., which provides:

> Except as provided in sub. (2m), a security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the secured party, and the required fee. It is perfected as of the later of the time of its delivery or the time of the attachment of the security interest.

146:8/26/04                              5

Case 03-37885-mdm    Doc 48    Filed 08/26/04    Page 5 of 8

Wis. Stats. § 342.19(2). Thus under state law, the earliest the lien could be deemed perfected is when the DOT took delivery of the certificate of title, October 6, 2003, nineteen days after the transfer took effect.

Because the lien was not perfected within the ten-day grace period provided by 11 U.S.C. § 547(e)(2)(A), the transfer of the security interest in the vehicle occurred when the lien was perfected. Thus, it was a transfer on account of an antecedent debt. *See In re Moeri*, 300 B.R. 326 (Bankr. E.D. Wis. 2003) (holding refinancing lender could not utilize "earmarking" doctrine to avoid effect of failure to perfect within ten days of loan); *In re Messamore*, 250 B.R. 913 (Bankr. S.D. Ill. 2000) (finding creditor's belated perfection was not "substantially contemporaneous" with its advance of funds). In essence, the transfer of funds was one transaction, and the perfection of the security interest was a second transaction. This second transaction improved the creditor's position by changing an unsecured debt (as to the trustee or other bona fide purchaser) to a secured debt.

The debtors challenged the trustee's right to avoid the lien given that the transfer of the security interest from one secured party to another did not in any way diminish the debtors' estate. This argument is invalid because once the credit union was paid, its lien was no longer effective. The release was an acknowledgment that it no longer had a secured debt, but in fact there was no debt to support the lien of record once payment was made. The status of the debt changed again when the bank perfected its lien – from an unsecured debt and back to a secured debt, with nineteen days between those events. Consequently, the belated perfection diminished the debtors' estate during the preference period.

This court also rejects the debtors' and bank's defense that the perfection was substantially contemporaneous with the initial transfer. The Seventh Circuit has adopted a flexible approach to whether a creditor's delay in perfecting defeats the "substantially contemporaneous" nature of an exchange. *Pine Top Ins. Co. v. Bank of America Nat'l Trust & Sav. Ass'n*, 969 F.2d 321, 328 (7th Cir. 1992); *see also In re McLaughlin*, 183 B.R. 171, 175 (Bankr. W.D. Wis. 1995). Under this analysis, the court should inquire into the length of the delay, the reason for the delay, the nature of the transaction, the intentions of the parties, and the possible risk of fraud. *Id.* In this case, the bank took immediate steps to begin the process of perfection by sending the check to the previous lien holder. The branch manager of the bank sent a letter to the credit union, which provided in relevant part:

> Enclosed please find a cashier's check for $11,142.07 to pay in full the loan of Mr. & Mrs. Buchner. This payoff is valid until September 19, 2003. This payoff was verified on September 16, 2003 and will release your lien on a 1996 Harley Davidson cycle....
>
> Please return your Satisfaction of Security Interests on said vehicle to First National Bank in Manitowoc. A self addressed stamped envelop is enclosed for your convenience. Any overage of payment should also be forwarded directly to the Buchner's [sic].
>
> Should you have any questions regarding this transaction, please contact me immediately....

(September 17, 2003, letter from Ginger S. Hammel, Branch Manager of First National Bank.)

There is no allegation that the bank requested the release on an expedited basis or did anything else to follow up on its request for the signed release of the security interest. In fact, it could have perfected its interest without the credit union release and moved up in priority after the release was received, easily preventing the result here. All of the blame should not fall on the credit union. The bank is a sophisticated lender who presumably knew of the importance of

prompt perfection of its interest. This is a garden variety transaction clearly appropriate for the bright line application of 11 U.S.C. § 547(c)(2), not a complicated commercial arrangement as occurred in *Pine Top*. If ten days is too short a period, as undoubtedly the bank believes, its remedy is with Congress.

The court is mindful of the fact that the bank did not engage in any behavior for which the preference statutes were initially drafted, i.e., racing to the courthouse to dismember the debtor. *Cf. In re Biggers*, 249 B.R. 873, 879 (Bankr. M.D. Tenn. 2000). Nonetheless, Congress has afforded only a ten-day grace period within which to perfect a security agreement and, absent allegation of a delay caused by circumstances beyond the bank's control, this court sees no reason to ignore that mandate. Otherwise, a ten-day statutory grace period is meaningless.

The bank properly released its security interest in the motorcycle. The lien granted by the debtors to the bank is an avoidable preference that is preserved for the benefit of the estate. The debtors have not paid the trustee to satisfy the lien, and the trustee is entitled to possession. The trustee's motion for turnover is granted.

Dated at Milwaukee, Wisconsin, August 26, 2004.

BY THE COURT:

Honorable Margaret Dee McGarity
Chief United States Bankruptcy Judge

This is to certify that copies of this document were mailed this 26 day of Aug, 20 04 to the following:

146:8/26/04  8